# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

AMY SUZANNE PEARSON,  )
                      )
    Plaintiff,         )
                      )
v.                    )  Case No. CIV-15-386-SPS
                      )
NANCY A. BERRYHILL,   )
Acting Commissioner of the Social )
Security Administration,[1] )
                      )
    Defendant.        )

## OPINION AND ORDER

The claimant Amy Suzanne Pearson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 16, 1976, and was thirty-seven years old at the time of the administrative hearing (Tr. 231). She has a high school education, some college, and vocational training in nail technology, and has no past work (Tr. 108, 122-23). The claimant alleges that she has been unable to work since June 2, 2009, due to bipolar disorder (Tr. 231, 249).

## Procedural History

On January 17, 2013, the claimant filed an application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 17, 2014 (Tr. 95-110). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform a limited range of light work, *i. e.*, she could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours total during an eight-hour workday; sit for six hours total during an eight-hour workday; perform simple tasks with routine supervision; could have occasional contact with co-workers and supervisors; and could have no work

related contact with the public (Tr. 102). Since the claimant could perform light work, the ALJ found she could also perform sedentary work (Tr. 102). The ALJ concluded that the claimant was not disabled because there was work that she could perform in the national economy, *e. g.*, small products assembler, inspector packer, and motel inspector (Tr. 108-09).

**Review**

The claimant contends that the ALJ erred by failing to properly: (i) analyze her substance abuse, (ii) evaluate the opinion of consultative examiner Dr. Kathleen Ward, (iii) consider the side effects of her medication, and (iv) analyze her various Global Assessment of Functioning ("GAF") scores. The Court finds the claimant's first and second contentions persuasive, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of generalized anxiety disorder, major depressive disorder, paranoid type schizophrenia, bipolar disorder, methamphetamine abuse in remission by report, cannabis abuse, hepatitis C, obesity, and subjective complaints of idiopathic peripheral autonomic neuropathy and low back pain (Tr. 97-100). The medical record as to the claimant's mental impairments reveals that she was admitted to the Carl Albert Community Mental Health Center ("CACMHC") under emergency detention on July 16, 2011, after police discovered her walking in the middle of the road without shoes on, yelling for water, and throwing her mail on the ground (Tr. 394-410). Nurse practitioner Cindy Baugh conducted a psychiatric assessment at admission, and noted the claimant was alert but disoriented,

angry, hostile, unkempt, disheveled, and combative towards police (Tr. 399). She did not answer any questions and her judgment was grossly impaired (Tr. 399). The claimant admitted to using methamphetamine on the day of admission, and reported to Dr. Theresa Farrow that her drug use had a lot to do with why she was admitted for inpatient treatment (Tr. 404). After the claimant was stabilized with medication, Dr. Farrow discharged her on July 26, 2011, with diagnoses of bipolar disorder, mixed, severe, with psychotic feature; panic disorder with agoraphobia; cannabis abuse; and a GAF score of forty-two (Tr. 396). Dr. Farrow noted the claimant's prognosis was guardedly optimistic depending on follow-up care and compliance with treatment recommendations (Tr. 396). Thereafter, the claimant received outpatient mental health care at CACMHC, consisting of medication management and individual therapy, until March 9, 2012, when she was discharged due to non-compliance (Tr. 383-93).

On August 31, 2013, the claimant presented to a provider (whose name is illegible) at Mercy Health Clinic and reported depression for the previous thirty days, an inability to get out of bed, daily anxiety, crying spells, and occasional rage (Tr. 475). The claimant conveyed that she was not on any medications at the time for mental or physical impairments (Tr. 475). The claimant was prescribed anti-depressants (Tr. 475). At a follow-up appointment on September 11, 2013, the claimant reported she stopped taking one of her medications, but continued with the other, and that she continued to have depression and anxiety (Tr. 474). She similarly reported no change in symptoms at a follow-up appointment on October 16, 2013 (Tr. 474). The provider noted the claimant was seeing Dr. Nelson Onaro for her physical impairments, and suggested that she see

him for her mental impairments as well (Tr. 474). Dr. Onaro then managed the claimant's psychotropic medications through March 2014 (Tr. 477-524).

Dr. Kathleen Ward performed a psychological consultative examination on March 8, 2013 (Tr. 435-39). Dr. Ward noted, *inter alia*, that the claimant was socially disconnected and had poor insight into her mental health issues (Tr. 436). The claimant's thought processes were vaguely disconnected, but her speech was spontaneous with typical tone, rate, and volume (Tr. 436). Dr. Ward found the claimant had no bizarre thought content or evidence of delusional thought, and was oriented to time, date, and place (Tr. 436-37). Concentration and memory testing revealed the claimant could not complete reverse serial sevens, but could complete serial threes through thirty, spell "world" forward and in reverse, recall three out of three items immediately and after five minutes, and interpret some common proverbs (Tr. 437). Dr. Ward opined that the claimant had no significant deficits in social judgment and problem solving, was a poor historian, and was possibly incompetent to handle any funds awarded (Tr. 437). Dr. Ward stated that the claimant's social history suggested poor functioning and downward drift associated with severe and persistent mental illness (Tr. 437). She assessed the claimant with bipolar disorder, severe, with psychotic features in partial remission, cannabis abuse by history, and amphetamine abuse v. dependence by history (Tr. 437).

On April 2, 2013, state agency psychologist Randy Cochran, Psy.D., reviewed the record and found the claimant was markedly limited in her ability to carry out detailed instructions and to interact appropriately with the general public, and moderately limited in her ability to work in coordination with or in proximity to others without being

distracted by them, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and in her ability to respond appropriately to changes in the work setting (Tr. 157-58). He concluded that the claimant could perform simple and repetitive work tasks for a sustained period of time and at an appropriate pace with routine supervision and no public contact; could relate to supervisors and co-workers on a superficial work basis; and could adapt to some change in a work environment (Tr. 158). His conclusions were affirmed on review (Tr. 171).

As to the claimant's substance abuse, there are three drug tests contained in the record. A urine drug screen conducted upon admission to CACMHC on July 16, 2011, was positive for amphetamine and marijuana (Tr. 371). A urine drug screen conducted three days later, on July 19, 2011, was positive for marijuana, but not amphetamine (Tr. 406). Lastly, a urinalysis performed on July 7, 2013, in conjunction with an emergency room admission for an impairment unrelated to the claimant's disability claim, was positive for amphetamine and opiates, but not marijuana (Tr. 463).

At the administrative hearing, the claimant testified as to her past work history, her impairments, and her medical treatment (Tr. 416-442). She stated her psychological impairments were the most significant impairments preventing her from working (Tr. 123). She testified that she has trouble leaving her home due to paranoia (Tr. 124). As to her drug use, the claimant stated she last used methamphetamine two years prior to the hearing, and that she had never tested positive on a drug test (Tr. 126). She was not certain when she last used marijuana, nor did she know where she obtained the money she used to purchase drugs (Tr. 126-27). The claimant stated what her mental health

related diagnoses were, but could not explain how her paranoid schizophrenia affected her (Tr. 132-33). The claimant also testified that she more or less sleeps twenty-four hours in a typical day (Tr. 129, 134-35).

In his written decision, the ALJ summarized the medical evidence and the claimant's hearing testimony. In discussing the opinion evidence, the ALJ gave little weight to Dr. Ward's consultative exam because he found it was not fully supported by or consistent with the medical evidence of record as a whole, and because it was made "without [the] benefit of knowing the truth about the claimant's methamphetamine use." (Tr. 105). He then gave the state agency psychologists' opinions great weight because they were fully supported by and consistent with the medical evidence of record as a whole (Tr. 105). As to the GAF scores, he discredited GAF scores in general, and then noted the claimant's low GAF score of eighteen upon admission to CACMHC, but dismissed it since the claimant tested positive for methamphetamine and marijuana that day, and was not taking any psychotropic medication (Tr. 106).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment

provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ summarized Dr. Ward's report, but provided no analysis at all in relation to the pertinent factors. Additionally, the ALJ gave little weight to Dr. Ward's opinion partly because it was inconsistent with the medical evidence of record as a whole. This would have been a legitimate reason for rejecting Dr. Ward's opinion if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Moreover, the primary reason given by the ALJ for rejecting Dr. Ward's opinion was that the claimant's failure to disclose her "frequent use of methamphetamine," resulted in "a failure to allow the examiner to give an opinion with the benefit of truthful and accurate information about the claimant's illegal drug use and

the effects it may have on her periodic and severe emotional decompensations." (Tr. 105).

The ALJ did not, however, properly account for the claimant's substance abuse in formulating her RFC. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7. In this case, the ALJ discounted Dr. Ward's opinion for an inability to provide an opinion that accounted for "periodic and severe emotional decompensations," yet does not express how he accounted for them in her RFC, either. Additionally, the RFC does not reflect that the ALJ accounted for the claimant's severe impairments involving substance abuse at all nor does he explain how her substance abuse impairments in combination with her mental impairments affected her RFC.

Because the ALJ failed to properly evaluate Dr. Ward's opinion and the claimant's substance abuse, the decision of the Commissioner must be reversed and the case remanded for further analysis. On remand, the ALJ should re-evaluate the effect of the claimant's substance abuse, and give proper consideration to the opinions of Dr. Ward. If this analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**